UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BlockCommerce, LLC, | § |
| Plaintiff | § |
| vs. | §  Civil Action No.: 4:24-cv-5104 |
| Savvy Wallet, LLC, and Gregory "Tuffy" Baum, individually | § |
| Defendants | § |

## PLAINTIFF'S ORIGINAL PETITION

### INTRODUCTION

1. Plaintiff BlockCommerce, LLC brings this action against Savvy Wallet, LLC (hereinafter "Savvy") and Gregory "Tuffy" Baum, individually, for breach of contract, fraud, and breach of fiduciary duties. Plaintiff is seeking damages, injunctive relief, and other equitable remedies due to Defendants' failure to process a transaction as stipulated in a business agreement dated October 8, 2024.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter under 28 U.S.C. §1332(a) as the amount in controversy exceeds $75,000 exclusive of interest and costs, and the parties are citizens of different states. Plaintiff is incorporated in Texas. Defendants are citizens of Wyoming and Utah respectively.

3.  Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas, where Plaintiff and Defendants have conducted relevant business activities.

## STATEMENT OF FACTS

4.  Between September 1, 2024, and October 8, 2024, Defendants represented Savvy's capability as a registered Money Services Business ("MSB") with "millions of dollars in weekly transactions with private sellers, family offices, and trusts" in a series of phone calls, Whatsapp calls, and messages on apps such as Telegram, Signal, and Whatsapp to Plaintiff

5.  Defendants represented relationships with "background fulfillment partners" that included International Royal Family, and entities directly working with the FED and Treasury department of the US. Through these relationships, Defendants claimed access to 'Discount Crypto Trade' wherein they purchase cryptocurrencies such as USDT and BTC at a lower price than available in the market.

6.  Defendants insisted on a minimum transaction of $10 million to participate in the 'discount trade' but made an exception in allowing Plaintiff to join these transactions with $1.2 million as a "test" to prove the Defendant's capability.

7.  On October 8, 2024, Plaintiff and Defendants entered into a contract wherein Defendants agreed to process a transaction where Plaintiff would wire $1.2 million to Defendant Savvy's bank account and receive $1.26 million in equivalent USDT within 2 business days.

8.  Plaintiff sent a total of $1,206,576.80 in 2 bank wires dated October 8, 2024, with a promised return of $1,266,905.60 from Defendant within 3 business days.

9.  On October 9, 2024, Defendants claimed they had converted the funds to USDT with their liquidity partner, combined them with their tranche of $10m to the Royal Family Trust in Riyadh for completion of the transaction at a discount as promised.

10. On October 13, 2024, Defendants claimed the Royal Family Trust was unable to complete the transaction and returned the funds to Defendant Savvy. Defendants further claimed that they had unilaterally elected to send the funds to a different party named "Teddy" at "IDND Corporation" for completing the transaction without Plaintiff's knowledge or approval.

11. From October 13, 2024, onwards, Defendants repeatedly, verbally and in writing, claimed "Teddy" had lost Plaintiff's funds and promised Plaintiff immediate resolution and payment of the $1.26 million.

12. After further delays, Defendants promised an additional $1 million in penalties on top of the $1.26 million to Plaintiff imminently.

13. On October 18, 2024, to deter Plaintiff from involving law enforcement and the Courts, Defendants threatened that such action would result in funds being locked up and Plaintiff may not recover the funds for an indefinite period. Defendants would repeat this threat regularly in further phone calls and messages. Instead, Defendant Baum claimed he would speak with his high-level contacts in various federal agencies to resolve the issue.

14. On October 21, 2024, Defendant Baum claimed he had Interpol, FBI, and the Department of Treasury all working on resolving the issue. Further, he promised return of funds as he had "multiple inbounds." Defendant Baum claimed deep and "high level" contacts within various federal agencies to create false credibility with Plaintiff.

15. Between October 23, 2024, and November 10, 2024, the Attorney General's Office of the State of Utah contacted Defendants with an inquiry regarding this transaction. Defendants repeatedly assured the Utah Attorney General's Office that he would make the payment shortly to Plaintiff.

16. On November 13, 2024, Plaintiff physically visited Utah to meet with Defendants. The meeting took place at La Barba Coffee in Draper, Utah. It was attended by Matt Greene, the owner of BlockCommerce, his two associates that help manage Blockcommerce, Tuffy Baum, the owner of Savvy Wallet, and his son Jake Baum who helps manage Savvy Wallet.

17. At this meeting, Defendant Baum claimed to have misunderstood the situation. He assumed that Plaintiff did not have any more capital to transact with. Had he known that Plaintiff had more funds to transact, he would have prioritized resolving the issues. Defendant Baum admitted his mismanagement and failure as a fiduciary and custodian.

18. At the meeting, Defendants promised immediate resolution including the promise to repay at least a portion of the funds by the end of the day "one way or another."

19. As further evidence of ability to pay, Defendants sent Plaintiff a log of Savvy's own transactions in the past 30 days totaling over $18 million. Defendants claimed there were substantially more private transactions that were not included in the log.

20. Defendants recommended that Plaintiff engage in further transactions while waiting on the first one to clear. Plaintiff believed this to be a ruse to try and steal more funds, and declined to engage in more transactions until the initial funds were returned with penalties.

21. Thereafter, Defendants reverted to the same modus operandi as before with consistent promises of imminent return of funds.

22. After again failing to meet the deadline of November 15, 2024, Defendants claimed they would make full payment within the next 2 days on account of large sums they were to receive from Hong Kong, Colombia, and other locations.

23. By November 19, 2024, Defendants had again missed all deadlines and now told Plaintiff that the delay was due to Defendants needing to bribe government officials in Colombia to get their funds released.

24. By this point, Plaintiff discovered several troubling facts about Defendants, including their potential involvement in money-laundering operations, prior investigations by Federal agencies, and prior participation in Ponzi schemes. Plaintiff is concerned that their funds may have been used to repay other investors or the discounts may be from money laundering activities.

25. From December 9, 2024, onwards, Defendants once again engaged in extortive behavior by threatening Plaintiff against filing any legal action. Defendant Baum "promised" that should there be legal action taken against him, he would not only not make payments, but would actively interfere with Plaintiff's businesses to cause more harm. Defendants asked for another week to complete a transaction with another client that would allow Defendants to make the due payments.

26. Defendants have failed to complete this transaction as of December 18, 2024, and instead have effectively stolen said funds.

27. Defendants, in an effort to prevent legal action, assured Plaintiff of the complete return of funds, with a penalty of $1 million. From October 8, 2024, through November 30, 2024, Defendants promised immediate or imminent return of funds with penalties no less than 34 times, often promising the funds within hours or the same day.

28. Plaintiff has incurred significant costs including gap financing charges and lost business in the interim.

29. Plaintiff has suffered reputational harm, loss of business, and loss of profits directly due to Defendants's fraud, breach of fiduciary duty, and violation of MSB responsibilities.

## CAUSES OF ACTION

30. Defendant Savvy's failure to process the transaction within the agreed timeframe constitutes a material breach of the contract.

31. As a registered MSB, Defendant Savvy had specific fiduciary duties which it breached, leading to financial loss and damage to Plaintiff's business.

32. Defendants fraudulently represented abilities and volume of business that were materially and demonstrably false. The representations included volume of more than $10 million per day, routinely completing international transactions with discounts of 4-6%, and safety of custodied funds. Plaintiff jointly and individually relied upon these fraudulent statements to engage in business with Defendants.

## RELIEF REQUESTED

33. Plaintiff requests judgment against Defendants for $4,866,931.7 ($4.867 million) plus legal fees, which includes the original transaction amount plus a 5% monthly interest as stipulated in the demand letter, $638,000 incurred by Plaintiff in gap financing charges, $189,000 in additional business fees and costs, $1.5 million in lost business from the theft of funds, and $1 million in promised penalties and damages by Defendants.

34. Plaintiff seeks a TRO to prevent Defendants from moving any funds from its accounts pending the outcome of this case, and to ensure the availability of assets for satisfaction of any judgment.

35. Plaintiff requests an immediate freeze on all assets of Defendants to prevent any dissipation or transfer of assets that might frustrate the judgment.

36. Plaintiff seeks such other and further relief as the Court deems just and proper, including costs, attorney's fees, and any pre-judgment or post-judgment interest.

## JURY DEMAND

37. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues so triable.

## CONCLUSION

38.  Plaintiff respectfully requests this Honorable Court to enter judgment in its favor, grant the requested equitable relief, and award damages as outlined above.

Respectfully submitted,

/s/ Gavin Clarkson
Dr. Gavin Clarkson, Esq.
State of Texas Bar No. 24067335
Clarkson PLLC
1773 Westborough Drive, Suite 927
Katy, TX 77449
DrGavin@Clarkson.LLC

**ATTORNEY FOR PLAINTIFF**